IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| ROBERT BAILEY, | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-2115 |
| v. | ) | |
| MEMPHIS BONDING COMPANY, INC.; GEORGE A. HITT; TRACY VAN PITTMAN; and JOHN DOE (a fictitious party), | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants Memphis Bonding Company, Inc. ("Memphis Bonding"), George A. Hitt, Tracy Van Pittman, Melody Martin, and Brooks McGowan's July 23, 2018 Motion to Dismiss for Failure to State a Claim.[1] (ECF No. 25.) Plaintiff Robert Bailey responded on September 27, 2018. (ECF Nos. 28, 28-1.) Defendants replied on February 25, 2019. (ECF No. 44.)

---

[1] Defendants bring this Motion to Dismiss on behalf of Melody Martin and Brooks McGowan. Martin and McGowan are not named as defendants in the caption of the Amended Complaint, there are no allegations against them in the Amended Complaint, and they do not appear on the Court's docket. The parties do not mention Martin or McGowan in their respective memoranda. Martin and McGowan are not parties to this action.

For the following reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## I.  Background

For purposes of the Motion to Dismiss, the facts are taken from the Amended Complaint.

Memphis Bonding is a bail bonding company operating in the Memphis, Tennessee area.  (See ECF No. 22 ¶ 2.)  Defendant Hitt is the president and sole shareholder of Memphis Bonding.  (Id. ¶ 3.)  On or around September 18, 2015, Bailey went to Memphis Bonding's office to obtain a bail bond to secure the pretrial release of his brother, Lee Johnson.  (Id. ¶ 10.)  Johnson had been arrested, and the presiding court had set his bail at $75,000.  (Id. ¶ 9.)

Bailey met with Defendant John Doe, a bonding agent working for Memphis Bonding.  (Id. ¶ 10.)  Bailey explained that he was there to arrange for the release for his brother, but that "he was not going to pay any money out of his pocket or agree to pay any money in the future."  (Id.)  Bailey said the only agreement that he would make was to pledge his house as security to guarantee Johnson's appearance in court.  (Id.)  Doe said that he understood and agreed.  (Id.)  Doe presented Bailey with a document for his signature and told Bailey that Memphis Bonding would release its security interest in Bailey's house if Johnson appeared in court.  (Id.)  Doe was the only person present to

witness Bailey signing the document. (<u>Id.</u>) After signing, but without receiving a copy of what he had signed, Bailey left. (<u>Id.</u>) Bailey's entire visit to Memphis Bonding lasted about five minutes. (<u>Id.</u> ¶ 11.) Bailey alleges that the paperwork he signed did not match his agreement with Doe. (<u>Id.</u> ¶ 23, 38, 42.) Bailey represents that the paperwork obligated him to pay Memphis Bonding the unpaid portion of the bond premium whether his brother appeared in court or not. (<u>Id.</u> ¶ 13, 14, 38.)

On October 1, 2015, Memphis Bonding filed a deed of trust (the "Deed of Trust") with the Shelby County Register's Office, which recorded the deed. (<u>Id.</u> ¶ 11.) The Deed of Trust arrived by United States Mail with a check from Memphis Bonding to cover the filing fee. (<u>Id.</u>) The Deed of Trust is a preprinted form with blanks that were filled in with the date September 18, 2015, the name of Robert Bailey as the "first part," Memphis Bonding Company as the "Trustee" and Grantee, the property description of Bailey's house, and a description of indebtedness to Memphis Bonding in the sum of $75,000.00 "as . . . Collateral for Lee Johnson." (<u>Id.</u>; Deed of Trust, ECF No. 22-1.) On the second page, Bailey's purported signature appears. (<u>Id.</u>) The signature of a notary appears twice along with the notary seal of Defendant Pittman. (<u>Id.</u>) Bailey denies signing the Deed of Trust. (<u>Id.</u>)

Johnson appeared in court, and the bail bond was not forfeited. (<u>Id.</u> ¶ 12.) Bailey learned in 2018, however, that

the Deed of Trust remained a $75,000 encumbrance on his house. (Id.) After learning of the encumbrance, Bailey went to Memphis Bonding's office to ask about the Deed of Trust and any outstanding indebtedness. (Id. ¶ 13.) An employee told Bailey that he continued to owe approximately $5,500 to Memphis Bonding. (Id.)

On February 21, 2018, Bailey filed a complaint against Defendants. (ECF No. 1.) Bailey alleges civil violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), the Truth-in-Lending Act (the "TILA"), and various state laws. (ECF No. 22 ¶¶ 17-53.) Bailey filed his First Amended Complaint on June 25, 2018. (ECF No. 22.) Defendants filed their Motion to Dismiss on July 23, 2018. (ECF No. 25.)

On January 18, 2019, the Court consolidated this case with Sharp v. Memphis Bonding Co., Inc., No. 18-2143, and Ray v. Memphis Bonding Co., Inc., No. 18-2144, for all purposes. (Min. Entry, ECF No. 42.)

## II. Jurisdiction & Choice of Law

The Court has federal-question jurisdiction. Under 28 U.S.C. § 1331, United States district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Bailey alleges that Defendants' conduct constitutes a civil violation of RICO, 18 U.S.C. §§ 1961, et seq., and the TILA, 15 U.S.C.

§§ 1601, _et seq._ (_See_ ECF No. 22 ¶¶ 17–29, 30–34.) Those claims arise under the laws of the United States. _See_ 28 U.S.C. § 1331; _see also_ 18 U.S.C. § 1964(d) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ."); _Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n_, 176 F.3d 315, 318 (6th Cir. 1999) (noting that RICO claims provide basis for federal-question jurisdiction).

The Court has supplemental jurisdiction over Bailey's state-law claims. _See_ 28 U.S.C. § 1367(a). Those claims derive from a "common nucleus of operative fact" with Bailey's federal claims against Defendants. _United Mine Workers of Am. v. Gibbs_, 383 U.S. 715, 725 (1966); _Soehnlen v. Fleet Owners Ins. Fund_, 844 F.3d 576, 588 (6th Cir. 2016); _see also_ 28 U.S.C. § 1367(a).

State substantive law applies to state-law claims brought in federal court. _See_ _Erie R.R. Co. v. Tompkins_, 304 U.S. 64 (1938). Where, as here, there is no dispute that a certain state's substantive law applies, the court will not conduct a choice-of-law analysis _sua sponte_. _See_ _GBJ Corp. v. E. Ohio Paving Co._, 139 F.3d 1080, 1085 (6th Cir. 1998). The parties assume in their respective motions and memoranda that Tennessee substantive law applies to Bailey's state-law claims and ground

their arguments accordingly.  The Court will apply Tennessee substantive law to Bailey's state-law claims.

## III.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery.  See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If a court decides in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679.  The "[f]actual allegations must be

enough to raise a right to relief above [a] speculative level."

Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## IV. Analysis

### A. RICO Claims

Bailey alleges that Defendants engaged in a pattern of racketeering activity to fraudulently obtain title to their customers' real property. (ECF No. 22 ¶ 22.) Bailey alleges Defendants falsely represented that the deeds of trust customers gave to Memphis Bonding as collateral would be released when the criminal charges against the bond's principal were resolved. (See id.) Bailey represents that Defendants made false representations to induce customers to sign blank or only partially filled in forms. (See id.) Defendants later used those forms to create deeds of trust on the customers' property naming Memphis Bonding or Defendant Hitt as grantee. (See id.)

Those deeds were falsely notarized by Defendant Pittman who did not witness customers signing the deeds. (See id.) Defendants then filed the deeds of trust in Tennessee and Mississippi by sending them through the mail. (Id. ¶ 15, 21.)

"RICO" is the acronym for the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68. RICO provides a private right of action to any person "injured in his business or property by reason of" a RICO violation. Id. § 1964(c). Congress included a civil cause of action to "prevent organized crime from obtaining a foothold in legitimate business." In re ClassicStar Mare Lease Litig., 727 F.3d 473, 483 (6th Cir. 2013) (internal quotations omitted). In pertinent part, RICO prohibits the following conduct:

- Section 1962(b) prohibits a person from using a pattern of racketeering activity, or the collection of an unlawful debt, to acquire or maintain control over an enterprise. See 18 U.S.C. § 1962(b).

- Section 1962(c) prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering, or the collection of an unlawful debt. See 18 U.S.C. § 1962(c).

- Section 1962(d) prohibits a person from conspiring to violate Sections 1962(b) or (c). See 18 U.S.C. § 1962(d).

Bailey brings claims against Defendants under these three subsections.[2] (See ECF No. 22 ¶¶ 22, 25, 26.)

---

[2]    Bailey does not bring a claim under 18 U.S.C. § 1962(a).

Five elements are common to all RICO violations: (1) the commission of at least two predicate RICO offenses; (2) the predicate offenses formed a "pattern of racketeering activity"; (3) the existence of an "enterprise" as defined under RICO; (4) a connection between the pattern of racketeering activity and the enterprise; and (5) damages resulting from the RICO violation. 18 U.S.C. § 1962(a)-(c); see VanDenBroeck v. CommonPoint Mortg. Co., 210 F.3d 696, 699 (6th Cir. 2000) abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co., 553 U.S. 639 (2008). A plaintiff showing the collection of an unlawful debt, however, need not otherwise establish a "pattern of racketeering activity." See 18 U.S.C. § 1962.

Defendants argue that Bailey's RICO claims should be dismissed for four reasons: (1) Bailey fails to plead plausibly that RICO "persons" distinct from the alleged RICO "enterprise" engaged in unlawful activity; (2) Bailey fails to allege two or more predicate offenses; (3) Bailey fails to allege a "conspiracy"; and (4) Bailey fails to allege the existence of a RICO enterprise separate "from the alleged pattern of racketeering." (ECF No. 25-1 at 101—03, 103—04, 104-05, 105—06.)

### 1. Distinctness

To succeed, Bailey must show the existence of two distinct entities: (1) a RICO "enterprise"; and (2) a RICO "person" who

used or conspired to use the enterprise to violate RICO. See
Fleischhauer v. Feltner, 879 F.2d 1290, 1297 (6th Cir. 1989).
Section 1961(3) defines a "person" as an "entity capable of
holding a legal or beneficial interest in property." 18 U.S.C.
§ 1961(3). Section 1961(4) defines an enterprise as "any
individual, partnership, corporation, association or other legal
entity, and any union or group of individuals associated in fact
although not a legal entity." 18 U.S.C. § 1961(4).

Bailey alleges that Defendants Memphis Bonding, Hitt,
Pittman, and Doe are RICO "persons," and that Memphis Bonding is
the RICO "enterprise." (ECF No. 22 at ¶¶ 19-20.) Defendants
argue that Bailey fails to allege adequately the existence of
RICO persons distinct from the RICO enterprise. (See ECF No.
25-1 at 101—03.) Defendants contend that the alleged
relationship between Defendants and Memphis Bonding is a routine
business relationship, which is insufficient to create RICO
liability. (See id.)

To state a valid RICO claim, the RICO person and the RICO
enterprise must be separate and distinct entities, "since only
'persons' can be held liable for RICO violations, while the
'enterprise' itself is not liable." In re ClassicStar Mare Lease
Litig., No. 5:07-cv-353-JMH, 2019 WL 289070, at *3 (E.D. Ky.
Jan. 18, 2019). To satisfy the "distinctness" requirement,
Bailey must allege facts suggesting that the enterprise is not

10

the same person referred to by a different name.  <u>Cedric Kushner</u>
<u>Promotions, Ltd. v. King</u>, 533 U.S. 158, 161 (2001).

Defendants' argument that Defendants Hitt, Pittman, and Doe
are not distinct from Memphis Bonding because they are "employed
by or associated with" Memphis Bonding is not well-taken.  (ECF
No.  25-1  at  101-02.)   "[I]ndividual  defendants  are  always
distinct  from  corporate  enterprises  because  they  are  legally
distinct  entities,  even  when  those  individuals  own  the
corporations  or  act  only  on  their  behalf."   <u>ClassicStar</u>,  727
F.3d at 492 (relying on <u>Cedric Kushner</u>); <u>see also</u> <u>United States</u>
<u>v. Najjar</u>, 300 F.3d 466, 484 (4th Cir. 2002) ("A certain degree
of 'distinctness' is required for RICO liability; however, where
a corporate employee . . . 'conducts the corporation's affairs
in a RICO-forbidden way,' the only 'separateness' required is
that the corporate owner/employee be a natural person and so
legally distinct from the corporation itself") (quoting <u>Cedric</u>
<u>Kushner</u>, 533 U.S. at 163).

Memphis Bonding, however, is "a corporation [that] cannot
be  both  the  'enterprise'  and  the  'person'  conducting  or
participating in the affairs of that enterprise."  <u>Begala v. PNC</u>
<u>Bank, Ohio, Nat. Ass'n</u>, 214 F.3d 776, 781 (6th Cir. 2000).  Bailey
cannot maintain an action against Memphis Bonding as both the
"enterprise" and the "person" subject to liability under RICO.
<u>See</u> <u>Begala</u>, 214 F.3d at 781; <u>accord</u> <u>Gilman v. Trott</u>, No. 1:07-

cv-1031, 2008 WL 4057542, at *4 (W.D. Mich. Aug. 28, 2008). Bailey's RICO claims against Memphis Bonding must be dismissed.

Defendants' Motion to Dismiss Bailey's RICO claims against Memphis Bonding is GRANTED. Bailey has sufficiently pled that Hitt, Pittman, and Doe are distinct from the alleged RICO enterprise. Defendants' Motion to Dismiss RICO claims against those defendants on grounds of distinctness is DENIED.

## 2. Pattern of Racketeering Activity

Bailey must adequately allege "a pattern of racketeering activity." 18 U.S.C. § 1962(b), (c). A pattern of racketeering activity requires, at a minimum, two acts of racketeering activity within ten years of each other. <u>Id.</u> § 1961(5).[3] The acts of racketeering that constitute predicate offenses for RICO violations are listed at 18 U.S.C. § 1961(1). <u>See</u> <u>Hubbard v. Select Portfolio Servicing, Inc.</u>, 736 F. App'x 590, 593 (6th Cir. 2018). "[T]he plaintiff must prove each prong of the predicate offense . . . to maintain a civil action under the RICO statute." <u>Cent. Distribs. of Beer, Inc. v. Conn</u>, 5 F.3d

---

[3] Two acts of racketeering are the minimum required. <u>See</u> 18 U.S.C. § 1961(5). "In practice, two acts of racketeering activity within ten years will not generally give rise to liability." <u>Grubbs v. Sheakley Grp., Inc.</u>, 807 F.3d 785, 804 (6th Cir. 2015). The plaintiff must also establish "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 237–39 (1989). This requirement is known as the "relationship plus continuity" test. <u>See</u> <u>Brown v. Cassens Transp. Co.</u>, 546 F.3d 347, 355 (6th Cir. 2008). The parties do not address that test, and the Court need not consider it <u>sua sponte</u>.

181, 183–84 (6th Cir. 1993) <u>vacated on other grounds by</u> <u>Bridge</u>, 553 U.S. at 639.

Defendants argue that Bailey has alleged only one predicate offense. (<u>See</u> ECF No. 23-1 at 103–04.) They contend that Bailey alleges only one instance of mail fraud, and thus his RICO claims must fail. (<u>Id.</u>) Bailey responds that the Amended Complaint alleges "much more than just two predicate offenses." (ECF No. 28-1 at 132.) He contends that he has alleged "many years of racketeering activity in interstate filings of Deeds of Trust[,]" and that he "actually name[s] four other victims in three other lawsuits . . . ." (<u>Id.</u>)

Bailey alleges that Defendants committed acts of mail fraud as part of their scheme to defraud their customers and that those acts constitute a pattern of racketeering activity. (<u>See</u> ECF No. 22 ¶ 24.) Mail fraud is a predicate offense under RICO. <u>See</u> 18 U.S.C. § 1961(1). When an alleged pattern of racketeering consists entirely of fraudulent acts, a plaintiff's allegations must comply with the heightened pleading standard under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires Bailey to allege, "[a]t a minimum, . . . the time, place and contents" of the misrepresentation he alleges. <u>Frank v. Dana Corp.</u>, 547 F.3d 564, 569–70 (6th Cir. 2008).

At the motion to dismiss stage, the court must also consider Federal Rule of Civil Procedure 8, which says that a plaintiff

need only provide a "short and plain statement of the claim" and "simple, concise, and direct" allegations. "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8"; rather, "the two rules must be read in harmony." <u>Michaels Bldg. Co. v. Ameritrust Co., N.A.</u>, 848 F.2d 674, 679 (6th Cir. 1988). Read together, Rules 8 and 9(b) require that a plaintiff "provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." <u>Id.</u> Given those requirements, the question is whether Bailey sufficiently alleges that Defendants committed at least two instances of mail fraud.

Bailey sets out Defendants' alleged scheme to defraud their customers in paragraphs 22 and 23 of his Amended Complaint. (<u>See</u> ECF No. 22 ¶ 22–23.) Defendants appear to concede those allegations adequately allege one violation of mail fraud. Bailey argues that paragraphs 22 and 23, read in conjunction with three other paragraphs, allege additional instances of mail fraud that Defendants committed against other victims. (<u>See</u> ECF No. 25-1 at 103–04.)[4]

The additional allegations are paragraphs 15, 16, and 27 of the Amended Complaint. (<u>See</u> <u>id.</u>) In relevant part, paragraph

---

[4] The plaintiff in a RICO case need only be injured by a single predicate act committed in furtherance of the scheme. <u>See</u> <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 488–93 (1985). He may use predicate acts against other victims to show of a pattern of racketeering. <u>Id.</u>

15 alleges that Memphis Bonding "has been a prolific filer of Deeds of Trust identical in form" to the one Bailey signed and that those deeds of trust were filed by mail. (ECF No. 22 ¶ 15.) Paragraph 16 alleges that three other lawsuits "with very similar allegations have been filed in this Court . . . ." (Id. ¶ 16 (case citations omitted).) Paragraph 27 alleges that "[t]he scheme which the Defendants perpetrated on Mr. Bailey is a pattern which appears in other cases of [Memphis Bonding's] customers, including cases already filed in this Court (as mentioned above)." (Id. ¶ 27.)

Ordinarily, the Court would be limited to the four corners of Bailey's Amended Complaint when addressing a motion to dismiss. Within those four corners, Bailey does not allege mail fraud against other individuals with sufficient particularity. Rule 9(b) requires Bailey to allege, "with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Although Bailey generally alleges that Defendants defrauded "other customers" in a similar way, Bailey does not allege the identity of those other customers or specifically allege the time, place, and contents of the misrepresentations made to them. Those allegations fail to state additional instances of mail fraud adequately.

Paragraphs 16 and 27 in Bailey's Amended Complaint refer to allegations made against Defendants in the complaints of other

15

cases pending in this court. (See ECF No. 22 ¶¶ 16, 27.)  Bailey alleges that Memphis Bonding has committed acts of mail fraud against other customers and that those allegations are adequately pled in: (1) Knight v. Memphis Bonding Co., Inc., No. 18-2112; (2) Bailey v. Memphis Bonding Co., Inc., No. 18-2115; and (3) Ray v. Memphis Bonding Co., Inc., No. 18-2144.  On a motion to dismiss under Rule 12(b)(6), the Court "consider[s] the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The Court may take judicial notice of the facts alleged in the cases Bailey cites.  See Buck v. Thomas M. Cooley Law Sch., 597 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").  That is especially true here, where Sharp and Ray have been consolidated with Bailey.

Mail fraud consists of (1) a scheme to defraud and (2) use of the mails in furtherance of the scheme.  See Riverview Health Inst. LLC v. Med. Mut. of Ohio, 601 F.3d 505, 513 (6th Cir. 2010).  The factual allegations in the Ray complaint are similar to the allegations here.  Therefore, the Court will consider whether Ray adequately alleges one or more additional instances

of mail fraud against Defendants that occurred within ten years of the mail fraud alleged in Bailey's Amended Complaint.

### a. Scheme to Defraud

A scheme to defraud is "[i]ntentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right and which accomplishes the designed end." Kenty v. Bank One, Columbus, N.A., 92 F.3d 384, 389-90 (6th Cir. 1996) (quoting Blount Fin. Servs., Inc. v. Walter E. Heller & Co., 819 F.2d 151, 153 (6th Cir. 1987)). A plaintiff must allege "misrepresentations or omissions which were 'reasonably calculated to deceive persons of ordinary prudence and comprehension'" on which the plaintiff relied. Id.

Plaintiffs Glenn Ray and Loris Shepard (collectively "Ray") set forth Defendants' scheme to defraud as follows:

> The pattern of racketeering consists of a fraudulent scheme by [Defendants] to obtain title to the Real Property of its customers by falsely representing that the collateral provided by the customers will be returned (as required by Tennessee law) when the criminal charges against the criminal defendant are resolved. By making that false representation, customers either sign documents which are blank or not fully completed, or customers provide enough information to the Defendants to create a Deed of Trust which is later signed and notarized, allowing [Memphis Bonding] to file a seemingly executed and notarized Deed of Trust with the appropriate office for recording such Deeds.

(No. 18-2144 ECF No. 22 ¶ 23.)

Ray went to Memphis Bonding to secure a bail bond for Shepard's son. (See id. ¶ 24.) Ray alleges that Sam Hawkins, a bonding agent employed by Memphis Bonding, falsely represented that Ray would owe no money and have no obligation to Memphis Bonding if Shepard's son appeared in court. (See id.) Shepard's son appeared. Ray alleges that Pittman "falsely notarized a signature of the Deed of Trust which he did not witness because" Ray did not "personally appear" before Pittman. (Id.) Defendants mailed the allegedly false deed of trust to the Shelby County Register's Office on February 14, 2016. (Id. ¶ 12.) Ray alleges that, as a result, Defendants obtained a lien on his home "under false and fraudulent circumstances." (Id. ¶ 24.)

Ray identifies the alleged misrepresentations, how those misrepresentations were false or misleading, and the dates or approximate dates on which they were made. Ray also alleges that Defendants' misstatements and omissions were intentional. (See id. ¶¶ 22, 23, 26.) Ray adequately sets out a scheme to defraud.

### b. Use of Mails

Ray alleges that Defendants' "scheme to obtain the Deed of Trust fully anticipates the use of the mail because the recording office accepts instruments by mail. [Memphis Bonding] has actually used the mail . . . to send the falsified Deed of Trust to the recording office." (Id. ¶ 23.)

Although Ray does not allege who sent the deeds of trust to the Register's Office, that is not dispositive. "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." United States v. Oldfield, 859 F.2d 392, 400 (6th Cir. 1988) (quoting Pereira v. United States, 347 U.S. 1, 8-9 (1954)). Ray alleges that Memphis Bonding and its employees engaged in a scheme that regularly sent fraudulent deeds of trust in the mail. (See ECF No. 22 ¶ 22.) Ray alleges Defendants used the mails in the ordinary course of business. Because Ray has adequately alleged a scheme to defraud and the use of the mail, he has pled an instance of mail fraud with sufficient particularity.

Bailey incorporates the factual allegations of Ray's complaint and thereby adequately alleges two or more instances of mail fraud that serve as RICO predicates.

### 3. Conspiracy

Defendants argue that Bailey has failed to allege a RICO conspiracy in violation of 18 U.S.C. § 1962(d) adequately because their business practices are authorized by Tennessee law. (See ECF No. 25-1 at 104-05.)

"To plausibly state a claim for a violation of 18 U.S.C. § 1962(d), plaintiffs must successfully allege all the elements

of a RICO violation, as well as alleg[e] 'the existence of an illicit agreement to violate the substantive RICO provisions.'" Heinrich v. Waiting Angels Adoption Servs., Inc., 668 F.3d 393, 411 (6th Cir. 2012) (quoting United States v. Sinito, 723 F.2d 1250, 1260 (6th Cir. 1983)).

Bailey alleges that Defendants agreed to engage in the scheme described above with the purpose of "obtain[ing] money from Mr. Bailey when none was owed." (ECF No. 22 ¶ 26.) Bailey alleges that each participant in the scheme played a particular role in carrying it out. (See id.) The Court has determined that Bailey has adequately pled RICO claims under § 1962(b) and § 1962(c) against Defendants Hitt, Pittman, and Doe. (See infra Sections IV(A)(1)–(2).) Bailey's allegation that Defendants agreed to take part in that scheme is sufficient to state a claim for RICO conspiracy under § 1962(d).

Bailey adequately alleges that Hitt, Pittman, and Doe violated 18 U.S.C. § 1962(d). Defendants' Motion to Dismiss the § 1962(d) claims against those defendants on grounds that their business practices were authorized by Tennessee law is DENIED.

### 4. Separateness

Defendants argue that any alleged relationship among them is a routine business relationship that is insufficient to create RICO liability. (See ECF No. 25-1 at 105–06.) They contend Bailey fails to state a claim under RICO because Defendants'

business activities are not "separate from the pattern of racketeering activity." (Id. at 105(quotation omitted).)

As noted, to state a claim under RICO, Bailey must allege the existence of an "enterprise" within the meaning of the statute. See VanDenBroeck, 210 F.3d at 699. An enterprise includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To show the existence of an enterprise under RICO, a plaintiff must plead that the enterprise has: (1) a common purpose; (2) a structure or organization; and (3) the longevity necessary to accomplish the purpose. See Boyle v. United States, 556 U.S. 938, 946 (2009). The plaintiff must show that the enterprise exists "separate and apart from" the pattern of racketeering. United States v. Turkette, 452 U.S. 576, 583 (1981). "[S]imply conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes." VanDenBroeck, 210 F.3d at 699.

Memphis Bonding Company, Inc. is the alleged enterprise. (ECF No. 22 ¶ 20.) As a corporation, Memphis Bonding has a distinct organizational structure and a continuing legal existence. See Dolle v. Fisher, No. E2003-02356-COA-R3-CV, 2005 WL 2051288, at *5 (Tenn. Ct. App. Aug. 26, 2005) (Under Tennessee

law, there is a "strong presumption" that a corporation is a separate legal entity). At the motion to dismiss stage, absent allegations that cast doubt on the existence of the alleged enterprise, "[c]ourts can reasonably assume that individuals and corporations have an organizational structure, are continuous, and have an existence separate and apart from any alleged pattern of racketeering activity." In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig., 2006 WL 1531152, at *9 (E.D. Pa. June 2, 2006). Bailey has adequately alleged the existence of a RICO enterprise.

* * *

Bailey's RICO claims against Defendants Hitt, Pittman, and Doe are adequately pled. Defendants' Motion to Dismiss the RICO claims against those defendants is DENIED.

### B. Truth-in-Lending Act Claims

The Truth-in-Lending Act (the "TILA") is a federal consumer protection statute intended to promote the informed use of credit by requiring certain uniform disclosures by creditors. See In re Cmty. Bank of N. Va., 418 F.3d 277, 303-04 (3d Cir. 2005) (citing 15 U.S.C. § 1607, as implemented by Regulation Z, 12 C.F.R. §§ 226.1, et seq.). The TILA has a dual purpose: "to facilitate the consumer's acquisition of the best credit terms available; and to protect the consumer from divergent and at times fraudulent practices stemming from the uninformed use of

credit." Jones v. TransOhio Sav. Ass'n, 747 F.2d 1037, 1040 (6th Cir. 1984) (citing Mourning v. Family Publ'ns Serv., Inc., 411 U.S. 356 (1973)).

Consistent with its purposes, the TILA gives a consumer-borrower the right to rescind a loan secured by the borrower's principal dwelling within three business days of the transaction. See 15 U.S.C. § 1635(a). The TILA allows rescission of a loan secured by the borrower's principal dwelling after three days if "the lender fails to deliver certain forms or to disclose important terms accurately." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411 (1998) (citing 15 U.S.C. § 1635(f)). Alternatively, the TILA allows an action for damages, including "actual damages," statutory damages in an amount "not less than $400 or greater than $4,000," and costs and attorney's fees. See 15 U.S.C. § 1640(a)(1)—(3).

To state a claim, the borrower must allege that the lender failed to disclose one of the enumerated items of information about the terms and conditions of the loan. See 15 U.S.C. § 1638(b)(1). Bailey alleges that the "agreement to defer payment of the 10% premium and other fees associated with a bail bond constitutes consumer credit extended for a personal or family purpose," and that Memphis Bonding committed several violations of Regulation Z because it provided no disclosures for the alleged debt. (See ECF No. 22 ¶¶ 31—33.)

Defendants argue that Bailey's TILA claims fail because: (1) they are time-barred by the applicable one-year statute of limitations; and (2) because the TILA does not apply to the bail bonding agreements. (See ECF No. 25-1 at 106—08.)

## 1. Timeliness

Fifteen U.S.C. § 1640(e) provides that actions for damages alleging TILA regulation violations "may be brought . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(3). As a general rule, "the statute of limitations begins to run 'when the plaintiff has [a] complete and present cause of action' and 'can file suit and obtain relief.'" Wike v. Vertrue, Inc., 566 F.3d 590, 593 (6th Cir. 2009) (quoting Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc., 522 U.S. 192, 201 (1997) (internal quotation marks omitted)). This suit is based on a bail bonding transaction that occurred on September 18, 2015. (See ECF No. 22 ¶ 11.) The Complaint was filed on February 21, 2018. (ECF No. 1.)

If TILA disclosures were never made to the borrower, the borrower "has a continuing right to rescind," and that right is "not dependent upon the one year statute of limitations period for a claim for damages." Rudisell v. Fifth Third Bank, 622 F.2d 243, 247–48 (6th Cir. 1980); see also 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years

after consummation."). If the required disclosures were made, "the obligor has [only] three days to rescind a credit transaction." McCoy v. Harriman Util. Bd., 790 F.2d 493, 496 (6th Cir. 1986). The borrower's continuing right to rescind "'shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first, notwithstanding the fact that' the required disclosures have not been made." Mills v. EquiCredit Corp., 172 F. App'x 652, 656 (6th Cir. 2006) (quoting 15 U.S.C. § 1635(f)).

Bailey's claim for rescission of the credit agreement is timely because the initial Complaint was filed within three years of the alleged bail bonding transaction. See 15 U.S.C. § 1635(f). Bailey's claims for damages under the TILA are subject to a one-year limitations period. See id. § 1640(f). Those claims are time-barred unless equitable tolling or estoppel applies.

"The doctrine of equitable tolling is distinct from the doctrine of equitable estoppel or fraudulent concealment." Cheatom v. Quicken Loans, 587 F. App'x 276, 281 (6th Cir. 2014). "Although a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally not an appropriate vehicle for dismissing a claim based upon the statute of limitations, if the allegations in the complaint affirmatively

show that the claim is time-barred, dismissing the claim under Rule 12(b)(6) is appropriate." Id. at 279.

A defendant may be estopped from invoking a statute of limitations defense in cases of fraudulent concealment. See Jones, 747 F.2d at 1041-43 (holding that equitable tolling was available in a TILA case when the complaint alleged "knowing and fraudulent concealment of the variable interest rate provision and of the mortgage note itself"). In such a case, the one-year limitations period begins to run when the borrower "discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation." Id. at 1041.

The elements of fraudulent concealment are:

(1) there must be conduct or language amounting to a representation of a material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

Cheatom, 587 F. App'x at 280 (internal quotations omitted).

"The Federal Rules of Civil Procedure . . . require that the acts constituting fraudulent concealment of a claim be pled in the complaint." Evans v. Pearson Enters., Inc., 434 F.3d 839, 851 (6th Cir. 2006). Those allegations must be pled with particularity under Rule 9(b). See id. at 850-51. Equitable

tolling based on fraudulent concealment should be "narrowly applied since '[s]tatutes of limitation are vital to the welfare of society and are favored in the law.'" Hill v. U.S. Dep't of Labor, 65 F.3d 1331, 1336 (6th Cir. 1995) (quoting Wood v. Carpenter, 101 U.S. 135, 139 (1879)).

The plaintiff must show that the defendant took affirmative steps to prevent the plaintiff from suing in time, "such as by hiding evidence or promising not to plead the statute of limitations." Bridgeport Music Inc. v. Diamond Time, Ltd., 371 F.3d 883, 891 (6th Cir. 2004). The plaintiff must also demonstrate that his failure to bring a timely suit "is not attributable to a lack of diligence on his part." Id. at 891. (internal quotation omitted)

Bailey alleges that Defendants' oral misrepresentations and falsely notarized deed of trust concealed his TILA claims until he discovered that Defendants had misled him. Bailey alleges that he went to Memphis Bonding to pledge his house as security for his brother's court appearance. (ECF No. 22 ¶ 10.) He alleges that Doe "made the false representation that Mr. Bailey would not owe any money or have any obligation to [Memphis Bonding] if his brother showed up in court." (Id. ¶ 23.)

Bailey adequately alleges fraudulent concealment of Defendants' TILA violations. First, Bailey alleges that Doe's statements misled Bailey to believe that he would owe money to

Memphis Bonding only if his brother failed to appear in court and that Memphis Bonding would take no property interest in Bailey's real property unless his brother failed to appear. Second, Bailey alleges that Defendants knew the true nature of the document Bailey was signing. (See ECF No. 22 ¶ 22.) Third, Bailey alleges that Defendants made the oral misrepresentations with the intent of inducing Bailey to sign the document. (See id.) Fourth, Bailey represents that he "has no knowledge of the existence or terms of [Memphis Bonding's] debt because [Memphis Bonding] has refused to provide copies of any such 'debt' documents." (ECF No. 28-1 at 138; see also ECF No. 22 ¶ 13.) Fifth, it was reasonable for Bailey to rely on Defendants' representations about the document they gave to Bailey to sign. Finally, the Court cannot conclude at this stage of the litigation that Bailey lacked diligence in pursuing his claim. Bailey alleges that Defendants told him that he would owe no money and would forfeit no collateral if his brother appeared in court. (See ECF No. 22 ¶ 10.) If true, Bailey would have had no reason to investigate his financial commitments to Defendants because his brother did appear in court.

Bailey's allegations support the inference that equitable estoppel for fraudulent concealment is appropriate in this case. Defendants' Motion to Dismiss Bailey's TILA claims based on the statute of limitations is DENIED.

## 2. Applicability to Bail Bond Collateral

The TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). Defendants argue that Bailey's TILA claims fail because he has not pled facts showing Defendants extended credit to Bailey. (See ECF No. 25-1 at 106—07.) Citing Buckman v. American Bankers Insurance Co. of Florida, 115 F.3d 892 (11th Cir. 1997), Defendants argue that bail bond agreements are not extensions of credit within the meaning of the TILA. (Id.)

Bailey responds that Buckman is inapposite because it does not address agreements to defer the payment of a bail bonding premium. (See ECF No. 28-1 at 134-36.) Bailey argues that where, as here, a person enters into a separate agreement with a bail bondsman to defer payment on the amount owed for the bond premium, the TILA applies. (Id.)

In Buckman, the plaintiff signed a bail bond agreement guaranteeing her daughter's court appearance on certain criminal charges. See 115 F.3d at 893. The plaintiff paid the defendant an $800 premium on her daughter's $8,000 bond and, as collateral for the bond, executed a promissory note and mortgage deed. (Id.) The plaintiff's daughter failed to appear for her court date, and the court forfeited the bond. (Id.) When the defendant attempted to collect on the note, the plaintiff sued the

defendant claiming the bail bond agreement violated the TILA. (Id.)

The Eleventh Circuit rejected the plaintiff's argument that the TILA applied to the promissory note where she agreed to be "obligated to the surety should the accused fail to appear in court." Buckman, 115 F.3d at 894. The court decided that this arrangement was a "contingent obligation," not an extension of credit. Id. (because "no amount is due . . . unless and until the bond is forfeited by the court," the plaintiff only became liable "by court order when the bond was breached"). The court explained that the lack of a "credit arrangement" -- that is, liability for a debt regardless of a certain condition being met -- meant no credit had been extended for purposes of the TILA. Id.

Unlike Bailey, however, the Buckman plaintiff paid the entire bail bond premium up front. See id. at 893; see also Buckman v. Am. Bankers Ins. Co. of Fla., 924 F. Supp. 1156 (S.D. Fla. 1996). Viewed in the light most favorable to him, Bailey alleges that he became liable to Memphis Bonding for the unpaid portion of the bail bond premium when the paperwork was signed on September 18, 2015. (See ECF No. 22 ¶ 13, 14, 38.) He owed money to Memphis Bonding whether his brother appeared in court or not. That liability to Memphis Bonding was not premised on any contingency or possible court order. Such an agreement is

a right granted by Memphis Bonding "to defer payment of debt"
and thereby constitutes "credit" under the TILA. 15 U.S.C.
§ 1602(f).

Defendants' Motion to Dismiss Bailey's TILA claims on the
grounds that the TILA does not apply to bail bonding agreements
is DENIED.

### C. Tennessee Consumer Protection Act Claims

The Tennessee Consumer Protection Act (the "TCPA")
"prohibits [u]nfair or deceptive acts or practices affecting the
conduct of any practice which is deceptive to the consumer or to
any other person." Conner v. Hardee's Food Sys., Inc., 65 F.
App'x 19, 25 (6th Cir. 2003); see Tenn. Code Ann. § 47-18-104(b);
Timoshchuk v. Long of Chattanooga Mercedes-Benz, No. E2008-
01562-COA-R3-CV, 2009 WL 3230961, at *3 (Tenn. Ct. App. Apr. 15,
2009). Bailey alleges that Memphis Bonding violated the TCPA
when it falsely represented to Bailey that the Deed of Trust he
signed was collateral only to guarantee his brother's appearance
in court. (ECF No. 22 ¶ 38.) Bailey alleges that act was
deceptive because the Deed of Trust also served as collateral
for the unpaid portion of the bail bond premium. (Id.)

Defendants argue that Bailey has failed to state a claim
under the TCPA because: (1) Bailey's claims are time-barred by
the applicable one-year statute of limitations; and (2) the

business practices about which Bailey complains are authorized by Tennessee law. (<u>See</u> ECF No. 25-1 at 108–12.)

### 1. Timeliness

A TCPA claim must be brought "within one (1) year from a person's discovery of the unlawful act or practice." Tenn. Code Ann. § 47-18-110; <u>see also</u> <u>Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc.</u>, 447 F.3d 923, 929 (6th Cir. 2006). The statute of limitations for TCPA claims begins to run when a plaintiff discovers the injury or when, in the exercise of reasonable care and diligence, a plaintiff should have discovered it. <u>Potts v. Celotex Corp.</u>, 796 S.W.2d 678, 680 (Tenn. 1990).

Defendants argue that Bailey's TCPA claims accrued when he signed the Deed of Trust at Memphis Bonding's offices. (<u>See</u> ECF No. 25-1 at 111.) They contend that, because Bailey "acknowledged signing documents at Memphis Bonding Company. . . . he knew or reasonably should have known of the 'injury' to his property upon the signing of the promissory note and the deed of trust." (<u>Id.</u>) Defendants represent that, if Bailey had exercised reasonable diligence, he would have ensured that his Deed of Trust was released after his brother appeared in court. (<u>Id.</u>)

The issue of "[w]hether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine." <u>Wyatt v. A-Best</u>

Co., 910 S.W.2d 851, 854 (Tenn. 1995). To succeed at this stage, Defendants must show that "the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct . . . ." Schmank v. Sonic Auto., Inc., No. E200701857COAR3CV, 2008 WL 2078076, at *3 (Tenn. Ct. App. May 16, 2008).

Bailey alleges he did not discover Defendants' alleged misrepresentations about their bail bonding agreement until 2018 when he learned of the Deed of Trust. (See ECF No. 22 ¶ 12.) Bailey has alleged that Doe told him any obligation he had to Memphis Bonding would be released if his brother appeared in court. (See id. ¶ 23.) Bailey alleges his brother did appear for his court date. (See id. ¶ 12.) The Court cannot conclude on the allegations before it that Bailey failed to exercise reasonable care and diligence.

### 2. Application to Defendants' Business

Defendants argue that Bailey fails to state a claim under the TCPA because the practices about which he complains are "standard bail bond procedures" authorized by Tennessee law. (See ECF No. 25-1 at 108.) Specifically, Defendants contend that their practices do not violate Tenn. Code. Ann. § 40-11-

33

138(8). That statute makes it sanctionable conduct for a bondsman to:

> Accept anything of value from a <u>principal</u> except the premium; provided, that the bondsman shall be permitted to accept collateral security or other indemnity from the principal which shall be returned upon final termination of liability on the bond. . . .

Tenn. Code. Ann. § 40-11-138(8) (emphasis added). Defendants argue that obtaining a deed of trust from Bailey did not violate the statute because Bailey is not a "principal." (ECF No. 25-1 at 109.) Bailey is the bond "indemnitor" to whom the statute does not apply. (<u>Id.</u>)

The TCPA prohibits a number of actions that constitute "unfair or deceptive acts or practices affecting the conduct of any trade or commerce" in Tennessee. <u>See</u> Tenn. Code Ann. § 47-18-104. Section 104(b) of the TCPA enumerates forty-nine specific acts that constitute "unfair or deceptive acts or practices." <u>Id.</u> § 47-18-104(b). The list includes "[r]epresenting that a consumer transaction confers or involves rights, remedies or obligations that [1] it does not have or involve or [2] which are prohibited by law." <u>Id.</u> § 47-18-104(b)(12) (bracketed numbers added). That provision contains two prongs, worded in the disjunctive. Bailey need only allege violation of one prong to state a claim.

To support his specific TCPA claims, Bailey alleges that Defendants misrepresented the nature of the bail bonding

agreement. (See ECF No. 22 ¶ 38.) Bailey plausibly pleads that Memphis Bonding violated the first prong of § 104(b)(12) when it represented the agreement conferred or involved "rights, remedies or obligations that it does not have or involve . . . ." Tenn. Code Ann. § 47-18-104(b)(12). The Court need not address Defendants' argument that Memphis Bonding's business practices are not "prohibited by law" under the second prong.

Defendants' Motion to Dismiss Bailey's TCPA claims is DENIED.

### D. Fraud

Bailey brings two claims of common-law fraud. Bailey alleges that Defendants falsely represented that the paperwork Bailey signed secured only the appearance of his brother in court and did not pledge security for any other debt. (See ECF No. 22 ¶ 42.) Bailey also alleges the Deed of Trust was fraudulently notarized because Defendant Pittman did not witness Bailey signing it. (Id.)

To establish a claim for fraud in Tennessee, Bailey must show that:

> (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

<u>Walker v. Sunrise Pontiac-GMC Truck, Inc.</u>, 249 S.W.3d 301, 311 (Tenn. 2008). Defendants contend Bailey fails to state a claim for fraud because (1) the statute of limitations has run, and (2) Bailey has not alleged legally adequate damages. (<u>See</u> ECF No. 129-30.)

### 1. Timeliness

Defendants argue the statute of limitations has run on Bailey's fraud claims. (<u>See</u> ECF No. 25-1 at 112.) Defendants contend that the "gravamen" of Bailey's claims "sounds in fraud under the TCPA, [so] the same statute of limitations should be applied . . . ." (<u>Id.</u>) The Court need not address Defendants' argument. Assuming Bailey's fraud claims should be treated as claims under the TCPA, the Court has determined that Bailey's TCPA claims are timely. (<u>See</u> <u>infra</u> Section IV.C.1.)

### 2. Damages

In Tennessee, a party induced by fraud to enter a contract may elect between two remedies: he may treat the contract as void and sue for the equitable remedy of rescission; or he may treat the contract as existing and sue for damages. <u>See</u> <u>Vance v. Schulder</u>, 547 S.W.2d 927, 931 (Tenn. 1977). A party seeking to rescind a contract based on fraud need not show pecuniary loss. <u>See</u> 13 Am. Jur. 2d Cancellation of Instruments § 17. Having elected to pursue monetary damages, however, Bailey must show he suffered pecuniary loss resulting from Defendants'

misrepresentations.  See City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 738 (Tenn. Ct. App. 1996).

Bailey alleges no specific out-of-pocket loss.  He alleges that his house "remains encumbered to the extent of $75,000" and the "fraudulent scheme has caused [him] damages in the loss of access to credit on the equity in his home."  (ECF No. 22 ¶ 42.) Defendants argue that these alleged damages are too speculative to sustain a claim for fraud.  (See ECF No. 25-1 at 112–13.) They contend Bailey's alleged damages are not sufficiently concrete because, for example, "Bailey has not asserted facts that suggest or confirm he went to a bank and applied for access to his equity."  (Id.)

Under Tennessee law, speculative damages cannot support a cause of action for fraud.  See Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC, 491 F.3d 522, 531 (6th Cir. 2007) (citing Anderson–Gregory Co. v. Lea, 370 S.W.2d 934, 937 (Tenn. Ct. App. 1963) (noting that "it is the rule that speculative damages cannot be recovered")).  According to the Restatement (Second) of Torts, "[o]ne who fraudulently makes a misrepresentation of fact . . . is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."  § 525 (1977) (emphasis added); see also Restatement (Third) of Torts: Liability for Economic Harm § 9 cmt. b(3) (Am. Law Inst.,

Tentative Draft No. 2, 2014) ("Damages awarded in tort for fraud may be measured on an 'out of pocket' basis").  The Supreme Court has similarly noted that "the common law has long insisted that a plaintiff in [a deceit or misrepresentation] case show . . . that he suffered actual economic loss."  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 343–44 (2005).

The parties do not cite, and the Court has not found, Tennessee authority establishing whether an encumbrance on a plaintiff's real property is itself a sufficient injury to sustain a fraud action.  In Shah v. Chicago Title & Trust Co., an Illinois appellate court considered the fraud claim of condominium purchasers who complained that the defendant had misrepresented the status of certain encumbrances on the property.  See 457 N.E.2d 147, 149 (Ill. App. Ct. 1983).  The court recognized that the plaintiffs could not recover for a "purely speculative loss."  Id. at 151.  The plaintiffs argued that, if they had tried to sell the condominium during the three-month period when the title was encumbered, they "may have encountered difficulty," but there was no evidence that the plaintiffs had actually tried to sell the property.  Id.  The court held that the plaintiffs' "hypothetical difficulty in selling their condominium is a purely speculative loss for which the law of common law fraud will offer no remedy."  Id.

There are similar considerations here. Bailey alleges his house was encumbered by the fraudulently-induced Deed of Trust, but he does not allege actual out-of-pocket losses resulting from that encumbrance. Without more, Bailey's "hypothetical difficulty" in obtaining credit secured by the equity in his home is a speculative loss that cannot sustain his claims for fraud.

Defendants' Motion to Dismiss Bailey's common-law fraud claims is GRANTED.

### E. Professional Negligence and Malpractice

Bailey alleges that Defendant Pittman breached his duty to Bailey by notarizing the Deed of Trust without actually witnessing Bailey's signature. (See ECF No. 22 ¶ 47.) Defendants contend Bailey fails to state a claim for professional negligence because (1) the claim is untimely, and (2) Bailey fails to allege legally adequate damages. (See ECF No. 25-1 at 113–14.)

#### 1. Timeliness

The parties dispute whether Bailey's claim for professional negligence is time-barred. (See id. at 114.) Defendants argue that Tenn. Code Ann. § 28-3-104(a) imposes a one-year statute of limitations on professional negligence and malpractice claims. (Id.) Bailey contends that his claim is subject to the three-year statute of limitations under Tenn. Code Ann. § 28-3-105.

(See ECF No. 28-1 at 143.)  This matter was filed on February 21, 2018, and the alleged bail bonding agreement was executed on September 18, 2015.  Absent tolling of the statute, the viability of Bailey's claim turns on which statute of limitations applies.

No party cites, and the Court has not found, any Tennessee authority discussing which statute of limitations applies to claims of negligence arising from a notary's misconduct.  To determine the applicable statute of limitations, the court "must ascertain the gravamen of each claim . . . ."  Benz-Elliott v. Barrett Enters., LP, 456 S.W.3d 140, 149 (Tenn. 2015).  To ascertain the gravamen of a claim, the "court must first consider the legal basis of the claim and then consider the type of injuries for which damages are sought."  Id. at 151.  This two-step approach is "fact-intensive and requires a careful examination of the allegations of the complaint as to each claim for the types of injuries asserted and the damages sought."  Id.

Bailey alleges that Pittman negligently breached his duty to Bailey by notarizing the Deed of Trust without actually witnessing Bailey's signature.  (See ECF No. 22 ¶ 47.)  Bailey's alleged damages resulting from Pittman's negligence are "the loss of access to equity in his house" and the "attorneys' fees and court costs" required to clear the title to his home.  (ECF No. 22 ¶ 48.)

Negligence claims for "injuries to the person" are subject to a one-year statute of limitations. Tenn. Code Ann. § 28-3-104(a)(1)(A). Negligence claims for injuries to property are subject to a three-year statute of limitations. <u>See</u> <u>Id.</u> §§ 105(1)-(2); <u>Taylor v. Miriam's Promise</u>, No. M201701908COAR3CV, 2019 WL 410700, at *7 (Tenn. Ct. App. Jan. 31, 2019).

Tennessee courts have recognized that the phrase "injures to the person," as it is used in Tenn. Code Ann. § 28-3-104(a)(1)(A), carries a broader meaning than merely physical injury to the body. <u>See</u> <u>Blalock v. Preston Law Grp., P.C.</u>, No. M2011-00351-COA-R3-CV, 2012 WL 4503187, at *5 (Tenn. Ct. App. Sept. 28, 2012). Courts have applied this one-year limitations statute to retaliatory discharge claims, <u>Sudberry v. Royal & Sun All.</u>, M2005-00280-COA-R3-CV, 2006 WL 2091386, at *5 (Tenn. Ct. App. July 27, 2006), abuse of process claims, <u>Blalock</u>, 2012 WL 4503187, at *7, mental anguish claims, <u>In re Estate of Wair</u>, No. M2014-00164-COA-R3-CV, 2014 WL 3697562, at *3 (Tenn. Ct. App. July 23, 2014), and wrongful death claims, <u>Sullivan ex rel. Wrongful Death Beneficiaries of Sullivan v. Chattanooga Med. Inv'rs., LP</u>, 221 S.W.3d 506, 508 (Tenn. 2007).

In adopting this broader interpretation, Tennessee courts have held that the one-year statute of limitations applies to "actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which

41

one is entitled by reason of being a person in the eyes of the law." <u>Brown v. Dunstan</u>, 409 S.W.2d 365, 367 (Tenn. 1966)

However, injuries to the person should be "distinguished from those [injuries] which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property." <u>Id.</u> Tennessee courts have rejected the narrow conclusion that "injury to property as contemplated [by Tenn. Code Ann. § 28-3-105] is limited to physical injury to property." <u>Vance</u>, 547 S.W.2d at 932. They have adopted the "opinion that a loss in value is also considered injury to property." <u>Gunter v. Lab. Corp. of Am.</u>, 121 S.W.3d 636, 642 (Tenn. 2003). When a court is faced with a dispute about which of the two statutes of limitations cited above applies, it must "determine whether [the plaintiff's] alleged injuries arise out of [his] property rights or [his] rights as a 'rational being.'" <u>Id.</u>

The legal basis for Bailey's claim is negligence. He seeks compensatory damages in an amount not less than $100,000.00, costs, and attorney's fees. (<u>See</u> ECF No. 22 ¶ 49.) The gravamen of Bailey's claim is an encumbrance on his real property, his resulting lack of access to his real property's equity, and legal costs associated with defending his title to the property. Those injuries accrue to Bailey "by virtue of an interest created by . . . property." <u>Brown</u>, 409 S.W.2d at 367. The three-year

statute of limitations imposed by Tenn. Code Ann. § 28-3-105 applies to this claim. Bailey's negligence claim against Pittman is not time-barred.

### 2. Damages

Defendants argue that Bailey fails to state a claim for negligence because Bailey has not identified any harm resulting from Pittman's alleged misconduct. (See ECF No. 25-1 at 113-14.) They contend that, even if Pittman were not present to witness Bailey signing the Deed of Trust, Bailey "was able to accomplish the purpose of his visit, which was to use real property to obtain his brother's freedom . . . ." (Id. at 113.) Bailey's damages resulting from Pittman's alleged negligence are "the loss of access to equity in his house" and the "attorney's fees and court costs" required to clear the title to his home. (ECF No. 22 ¶ 48.)

The Court has determined that one of Bailey's alleged injuries, his hypothetical loss of access to the equity in his house, was insufficient to sustain his fraud claims. (See infra Section IV.D.2.) The same is true of his negligence claim. See Maple Manor Hotel, Inc. v. Metro. Gov't of Nashville & Davidson Cty., 543 S.W.2d 593, 599 (Tenn. Ct. App. 1975) ("'The rule, applicable . . . in actions of tort, is that uncertain, contingent, or speculative damages may not be recovered.'") (quoting 25 C.J.S. Damages § 26)

Bailey's allegation about legal expenses is ambiguous. He seeks "damages in the form of attorneys' fees and other costs which will be necessary to clear up the title to his home." (ECF No. 22 ¶ 48.) It is not clear whether Bailey is referring to the legal costs resulting from this litigation or a possible future legal action to quiet title to his property. To the extent Bailey seeks damages to recover legal costs from a hypothetical future action, those damages are too speculative. "[T]o recover for [the] future effects of an injury, the future effects must be shown to be reasonably certain and not a mere likelihood or possibility . . . ." Rye v. Women's Care Ctr. of Memphis, MPLLC, 477 S.W.3d 235, 267 (Tenn. 2015) (internal quotation omitted). Bailey has not alleged facts suggesting future litigation is "reasonably certain" to occur. Assuming that a future lawsuit is reasonably certain, the amount of costs incurred during that hypothetical litigation is mere speculation.

To the extent Bailey argues the instant litigation is itself the injury suffered, the Court finds no Tennessee authority addressing whether damages resulting from the cost of litigation are sufficient to meet the damages element of a negligence claim. The Court concludes, however, that the costs incurred by Bailey in prosecuting this litigation are not a cognizable injury. To hold otherwise would render the damages element of negligence a

nullity for every plaintiff who hires an attorney or pays a court filing fee. Cf. Saltire, 491 F.3d at 530 ("'Damages attributable solely to the existence of litigation are clearly insufficient to sustain the necessary element of damages in a fraud claim.'") (quoting Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md., 763 F. Supp. 28, 33 (S.D.N.Y. 1991)).

Bailey's alleged injuries cannot establish a plausible entitlement to recover damages for Pittman's negligence. Defendants' Motion to Dismiss that claim is GRANTED.

### F. Libel and Slander of Title

To establish a claim for slander or libel of title under Tennessee law, a plaintiff must show: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statement proximately caused the plaintiff accumulative loss." Brooks v. Lambert, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999).

"[M]alice is a necessary ingredient of the action and must be both alleged and proven . . . ." Waterhouse v. McPheeters, 176 Tenn. 666, 145 S.W.2d 766, 767 (Tenn. 1940); see Brooks, 15 S.W.3d at 484. "A person acts maliciously when the person is motivated by ill will, hatred, or personal spite." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (1992). Although the complaint does not necessarily have to allege malice expressly,

it must at least allege "sufficient facts to give rise to a reasonable inference that the defendants acted maliciously." Ezell v. Graves, 807 S.W.2d 700, 704 (Tenn. Ct. App. 1990). The Federal Rules of Civil Procedure also require the plaintiff to plead malice either directly or by inference because it is an essential element of a claim for slander or libel of title under Tennessee law. See Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

Bailey fails to allege malice or any facts that would give rise to a reasonable inference of malice. See Waterhouse, 145 S.W.2d at 767. Bailey fails to state a claim for libel or slander of title. Defendants' Motion to Dismiss Bailey's libel and slander of title claims is GRANTED.

## V. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

So ordered this 21st day of March, 2019.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE